UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PAOLA CENTTI,

    Plaintiff,

v.                            Case No.:  2:23-cv-71-JES-KCD

GO FLORIDA INVESTMENTS
INC. and KOEN ROELENS,

    Defendants.
_____/

## REPORT & RECOMMENDATION

Before the Court is Plaintiff's Motion to Approve the Parties' Settlement Agreement. (Doc. 28.)[1] Defendants have signed the settlement agreement and do not oppose to the relief requested. (*Id*. at 7.) For the reasons below, Plaintiff's motion should be granted and the case dismissed.

### I. Background

Plaintiff Paola Centti worked as a "housekeeping coordinator" for Defendant Go Florida Investments, Inc. (Doc. 1 at 2.) Following her separation, Centti brought this suit under the Fair Labor Standards Act. She claims that Go Florida Investments and its owner, Defendant Koen Roelens, failed to pay

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

her overtime. The complaint seeks unpaid overtime plus liquidated damages and attorneys' fees. (Doc. 1.)

Defendants deny they violated the FLSA. (Doc. 10.) They also raise several affirmative defenses that would otherwise limit (or preclude) Centti's claims. (Doc. 10 at 7-10.)

The parties now move the Court to approve their settlement. They explain that several issues were disputed, litigating the case would be expensive and time consuming, and a bona fide dispute existed that led both sides to conciliation. (*See* Doc. 28.) Thus, according to the parties, the settlement is a reasonable and fair compromise. As for specifics, Defendants will pay Centti $11,400 in unpaid wages and liquidated damages. According to Centti, this amount represents "a complete payment of the whole amount of unpaid overtime wages Plaintiff estimated she was owed." (*Id.* at 3.) Defendants will also pay Centti's counsel $8,602.00 for fees and costs. (*Id.*)

## II. Legal Standard

The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). If an FLSA violation is shown, the employer must generally pay the

2

damaged employee unpaid wages, an equal amount as liquidated damages, and attorney's fees and costs. *See* 29 U.S.C. § 216(b).

After the Eleventh Circuit decided *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), courts in this district have taken the view that "suits to recover back wages under the FLSA may be settled only with the approval of the district court." *Flood v. First Fam. Ins., Inc.*, 514 F. Supp. 3d 1384, 1386 (M.D. Fla. 2021). Under *Lynn's Food* and its progeny, the parties to an FLSA settlement must present their agreement for a fairness evaluation. If the agreement reflects a fair and reasonable compromise of their dispute, the court may approve it. *See, e.g.*, *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013).

There is no standard test or benchmark to measure a settlement's fairness. Courts instead look to several factors, including (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). Courts weigh these factors against a background presumption that the parties reached a fair agreement. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

### III. Discussion

Based on the parties' representations and a review of their agreement (Doc. 28-1), the proposed settlement appears to be a fair and reasonable compromise of a disputed claim. Centti was represented by experienced counsel who had sufficient time and information to evaluate the potential risks and benefits of settlement. Centti also attests that she signed the agreement knowingly and voluntarily. While denying liability, and raising the specter of several defenses, Defendants have agreed to pay full value for Centti's claims and then some. (*See* Doc. 28 at 3.)

There is no stated or apparent collusion. Without a settlement, the parties would have to continue discovery, engage in dispositive motion practice, and possibly proceed to trial, and Centti would risk receiving nothing. Boiled down, the parties and counsel believe this is a reasonable settlement. (Doc. 28 at 4-5.)

As for attorneys' fees and costs, given Centti's representation that she agreed on those sums separately from the damages (Doc. 28 at 5), the Court need not undertake a lodestar review. And in any event, the fees and costs appear reasonable considering the time expended in the case. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

The settlement agreement contains a limited release (Doc. 28-1 at 4), which is appropriate in these circumstances. *Moreno v. Regions Bank*, 729 F.

Supp. 2d 1346, 1351-52 (M.D. Fla. 2010). Further, there are no other terms that courts have flagged as unenforceable, such as a confidentiality provision, *see, e.g.*, *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010), a non-disparagement clause, s*ee, e.g.*, *Loven v. Occoquan Grp. Baldwin Park Corp.*, No. 6:14-CV-328-ORL-41, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014), or a no-reemployment provision, *see, e.g.*, *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-CV-88 WLS, 2013 WL 5933991, at *5 (M.D. Ga. Nov. 1, 2013).

Accordingly, it is **RECOMMENDED** that the Court:

1. **GRANT** Plaintiff's Motion to Approve the Parties' Settlement Agreement (Doc. 28);

2. Dismiss the case with prejudice; and

3. Direct the Clerk to enter judgment and close the case.

**ENTERED** in Fort Myers, Florida on July 14, 2023.

Kyle C. Dudek
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.